## Staunton.

## Hawthorn Coal Corporation v. Clarence Blair and Charley Orender.

### September 21, 1922.

Absent, Kelly, P.

1. Agency—*Authority of Agent—Disobedience of Instructions by Agent—Good Faith of Agent—Case at Bar.*—In an action upon a contract between plaintiffs and a mine boss, the agent of defendant, by which plaintiffs were to do certain work for defendant, an instruction was erroneous which, in effect, told the jury that if the price for the work to be done by plaintiffs for defendant was reasonable and the agent did not intend to defraud his principal, but was acting for what he thought was his principal's best interest, the agent could make the contract and bind his principal without authority so to do, and indeed, directly in violation of his instructions from his principal not to make such a contract, and this although the plaintiffs with whom the agent undertook to contract knew at the time that the agent was acting in excess and in violation of his authority.

2. Agency—*General Agent—Mine Boss—Limitation Upon Authority.*—In the absence of knowledge, actual or constructive, on the part of parties entering into a contract with a general agent (such as the mine boss was in the instant case with respect to employing labor in and about the mine), of any limitation upon the authority of the agent, the parties may safely rely upon the apparent authority of an agent, incident to the position in which the principal has placed him and holds him out as having, in dealing through him with third persons.

Error to a judgment of· the Circuit Court of ·Wise county, in a proceeding by motion for a judgment for money. Judgment for plaintiffs. Defendant assigns error.

*Reversed and a new trial granted.*

This is an action by notice of motion instituted by the defendants in error against the plaintiff in error. The parties will be hereinafter referred to in accordance with their positions as plaintiffs and defendant in the trial court.

The object of the action on the part of the plaintiffs is to recover a certain balance alleged to be due them, by the defendant, for certain work done by them for the latter under an express contract, at the price which the defendant is alleged to have promised to pay therefor, to-wit, $3.00 per yard.

There. was a trial by jury which resulted in a verdict in favor of the plaintiffs for the sum of $332.45. The defendant moved the court to set aside the verdict because of error in the instruction given to the jury over the objection of the defendant, and for other reasons not necessary to be set forth here. This motion the court overruled; it entered judgment in accordance with the verdict; and the defendant brings error.

The court gave only one instruction, which is the instruction to which the defendant objected as aforesaid, and which is as follows:

"The court instructs the jury that if they believe from a preponderance of the evidence that Collins, the mine boss for the defendant, had the authority to make contracts for the mining of coal, but did not have the authority to make the contract in question, yet if you further believe from the evidence the defendant knew that Collins had made the contract with the plaintiffs, and the defendant accepted the work, believing that the terms were $2.00 per yard instead of $3.00 per yard, and paid for it, or paid for part of it, and you further believe the work done by the plaintiffs was reasonably worth the price Collins contracted to pay, and you further believe the contract was made in good faith by

Collins and the plaintiffs, and not with the intent to defraud defendant, you will find for the plaintiffs and assess their damages according to the terms of the contract; but if you believe the contract was made by the plaintiffs and Collins, the mine boss, with intent to defraud the defendant, you will find for the defendant on the yardage question all over $2.00 per yard.''

The uncontroverted evidence is that Collins, the mine foreman, did not have the authority to contract to pay more than $2.00 per yard for the work; that the defendant had expressly instructed him not to pay more than that for such work; but that Collins, however, finding that he could not get the work done for less than $3.00 per yard, let the work to contract to the plaintiffs and agreed to pay them therefor $3.00 per yard.    Knowing, however, that the defendant would not sanction that action on his part, and with the sole motive of getting the work done for the defendant at as low a cost as it could be done for at that time, and without any personal profit or advantage whatever in it for himself, Collins, when he made out and sent to the office of the defendant the pay-rolls from time to time as the work in question progressed, stated the price to be paid for the portions of the work as it was done, which were included in the respective pay-rolls, as being done for $2.00 per yard, but padded or falsified the statement of the yardage by increasing the yardage beyond that actually done, so that the number of yards stated, at the price of $2.00 per yard, would amount to the cost of the actual yardage at $3.00 per yard.    Several pay-rolls thus made out were paid by the defendant before it discovered the deception being practiced.    Meanwhile the work was completed, and thereupon the defendant paid the plaintiffs in full for the work done at $2.00 per yard, but refused to pay the balance of $1.00 per yard which the

plaintiffs claimed was still due them for the work at $3.00 per yard, and the plaintiffs instituted this action to recover such balance.

The plaintiffs, in their testimony, while admitting that they knew that Collins was stating in the pay-rolls the price to be paid them as $2.00 per yard, and was padding the yardage stated in the pay-rolls as aforesaid, so as to make the amount in fact paid them $3.00 per yard, claimed that they did not consider this any of their business; that as they had undertaken the work at a fair price of $3.00 per yard, that being as little as it could be done for, and Collins, the mine boss, having agreed to pay them that price, they, therefore, accepted the payments as made them from time to time as per the pay-rolls.

However, upon the crucial question in the case (namely, whether the plaintiffs knew, at the time they entered into the contract and did the work, that Collins was exceeding his authority in agreeing to pay them over $2.00 per yard), the testimony of both of the plaintiffs is indirect, quite vague and inconclusive. Besides, there was the evidence aforesaid with respect to the knowledge of the plaintiffs of how the mine boss was making out the pay-rolls; and there was further express testimony on behalf of the defendant to the effect that the plaintiffs had admitted, before the trial, that it was understood in advance between them and the mine boss that the latter was to make out the pay-rolls as he did, which should have been weighed by the jury on such question.

*O. M. Vicars*, for the plaintiffs in error.

*E. M. Fulton* and *J. L. Camblos*, for the defendant in error.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

1.  Did the court err in giving the instruction it did to the jury?

[1] This question must be answered in the affirmative.

By this instruction the court took away from the jury all consideration of the question of whether the plaintiffs knew, at the time they made the contract under which they seek to recover and did the work, that the mine boss, as agent of the defendant, exceeded his authority in agreeing to pay $3.00 per yard for the work.    The instruction, in effect, told the jury that if the price was reasonable and the agent did not intend to defraud his principal, but was acting for what he thought was the principal's best interest, the agent could make a contract for, and thereby bind his principal, without authority so to do, and, indeed, directly in violation of his instructions from his principal not to make any such contract, and this although the parties with whom the agent undertakes to contract know at the time that the agent was acting in excess and in violation of his authority.    Such is not the law.    To so hold is to destroy all right of legitimate control of one's own business.

[2] Of course, in the absence of knowledge, actual or constructive, on the part of parties entering into a contract with a general agent (such as the mine boss was in the instant case with respect to employing labor in and about the mine), of any limitation upon the authority of the agent, the parties may safely rely upon the apparent authority of an agent, incident to the position in which the principal has placed him and holds him out as having, in dealing through him with third persons.

But that is not the situation presented by the instruction aforesaid.

The case must be reversed, and a new trial will be awarded, to be had in accordance with the views above expressed.

*Reversed and a new trial granted.*